IN THE UNITED STATES DISTRICT COURT
FOR THE **DISTRICT OF NEBRASKA**

| | |
|---|---|
| ROBERT E. GREEN )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CONAGRA FOODS, INC., )<br>)<br>Defendant. )<br>)<br>) | Civil Action No. 8:08-cv-200<br><br>Senior Judge Lyle E. Strom |

**ORDER**

Whereas, the above-captioned patent infringement action (the "Action"), is likely to involve substantial discovery of information;

Whereas, the parties, through their undersigned attorneys, have conferred and stipulated that, in the interest of efficiency and in limiting the costs of this litigation, certain discovery protocols shall govern this Action as set forth below;

Whereas, this matter is before the Court with regard to Filing No. 40, a Stipulation and Joint Motion regarding discovery; and

Whereas, good cause having been shown, the Stipulation and Joint Motion reflected in Filing No. 40 is APPROVED, and it HEREBY IS ORDERED that the following protocols shall apply in this case:

I. **DISCLOSURE OR DISCOVERY OF ELECTRONICALLY STORED INFORMATION.**

**A.  DEFINITIONS.**

1. **Back-up Tapes**: "Back-up Tapes" mean magnetic tapes used to store copies of Back-up Data, for use when restoration or recovery of data is required. Data on back-up tapes are generally recorded and stored sequentially, rather than randomly, meaning in order to locate and access a specific file or data set, all data on the tape preceding the target must first be read, a time-consuming and inefficient process.  Back-up tapes typically use data compression, which increases restoration time and expense, given the lack of uniform standards governing data compression.

2. **Data**: "Data" means electronic information.

3. **Electronically Stored Information ("ESI")**:  ESI  means "documents" or "writings" as those terms are used in Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001(a), in electronic format, *i.e.*, Data.

4. **E-mail**: "E-mail" means an electronic means for communicating information under specified conditions, generally in the form of text messages, through systems that will send, store, process, and receive information and in which messages are held in storage until the addressee accesses them.

5. **Keyword Search**: "Keyword Search" means a search of the text of Electronic Information for one or more words or set of characters or numbers that are specified by a user.

6. **Load File**: "Load File" means a file that relates to a set of scanned images and indicates where individual pages belong together as documents.  Load files must be

obtained and provided in prearranged formats to ensure transfer of accurate and usable images and data.

      7.  **Meaningful and Relevant Electronic Information**: "Meaningful and Relevant Electronic Information" means that the Data to be produced would likely be admissible at trial and probative on a material issue and is reasonable in the volume.

      8.  **Metadata**: "Metadata" means information about a particular data set or document that describes how, when, and by whom it was collected, created, accessed, modified, sent, received, and how it is formatted.

      9.  **Parties or Party**: "Party or Parties" means each Party to this litigation, namely, Plaintiff Robert E. Green and Defendant ConAgra Foods, Inc.

      10. **Producing Party**: "Producing Party" means a Party that produces Data pursuant to this Order.

      11. **Receiving Party**: "Receiving Party" means a Party to whom Data is produced pursuant to this Order.

B.  SCOPE.

      1.  **Paper Document Collections**: Each Producing Party reserves the right to produce ESI in paper format, and to produce paper documents in paper format.  If, for purposes of production, a Producing Party converts paper documents to electronic formats such as .pdf format, the documents shall be produced pursuant to this Order.

      2.  **Deleted Files**: The Parties shall not be obligated under this Order to produce deleted Data unless the Party requesting the deleted Data establishes that there is

good cause to believe that the Producing Party intentionally deleted Data to avoid production of Meaningful and Relevant Electronic Information in this litigation.

      3. **Disputes**: The Parties shall meet and confer to resolve any procedures or disputes that arise under this Order.

      4. **Objective**: All Parties and the Court recognize the scope of this Action and the volume of the Parties' ESI means that discovery will be comprehensive, costly and burdensome, and that the Parties should use cost-effective and reasonable means of obtaining Meaningful and Relevant Electronic Information.

      5. **Cost Shifting**: The burden is on the Requesting Party to demonstrate by record evidence that any disputed request for production of Data (*i.e.* the production of data over and above production agreed to by the Parties) will result in the production of Meaningful and Relevant Electronic Information.  Absent such a showing, the entire cost of all activities associated with the identification, location, retrieval, assessment, review and production of the disputed Data shall be borne by the Requesting Party.

    **C. DOCUMENT PRODUCTION FORMAT.**

The following provisions shall generally govern the production format and procedure for ESI and are subject to the other provisions contained herein.

      1. **Format**:  Data shall be saved electronically as .pdf images, at the Producing Party's option.  Such image file or native format document shall not be manipulated to change how the source document would have appeared if printed out to a printer attached to a computer viewing the file.

2. **Load File**:  The Producing Party shall use reasonable efforts to provide a Load File to accompany the images to facilitate the use of the produced images by a document management or litigation support system.

3. **Document Unitization**: If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes shall be maintained as it existed in the original file or computer of the Producing Party.

4. **Color**: Documents containing color need not be originally produced in color.  If an original document contains color necessary to understand the meaning or content of the document, however, the Producing Party shall honor reasonable requests for either the production of an original document for inspection and copying, or production of a color image of the document.  The Receiving Party shall be responsible for the cost of color copying.

5. **Document Numbering for .pdf Images**: Each page of a document produced in .pdf file format shall have a legible, unique Document Number electronically "burned" onto the image at a location that does not obliterate, conceal or interfere with any information from the source document.  The Document Number for each document shall be created so as to identify the Producing Party and the Document Number.  If a document is produced subject to a claim that it is protected from disclosure under the Stipulated Protective Order, the words "CONFIDENTIAL PURSUANT TO COURT ORDER" shall be burned electronically on each page of such document after the Document Number.

      **6. Production Media**: The Producing Party shall produce documents on readily accessible, computer or electronic media as the Parties may hereafter agree upon, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface). Each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media as well as the sequence of the material in that production.

    **D. MISCELLANEOUS.**

      **1. Confidentiality of Produced Electronic Information**: ESI shall be produced pursuant to the terms of the Stipulated Protective Order. Any objections to production shall otherwise be made pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or the substantive law applicable to the claims in this Action.

      **2. Databases**: To the extent response to discovery requires production of ESI contained in a database, in lieu of producing the database, the Responding Party may produce reports from the database. Upon review of the reports, the Receiving Party may request additional information to explain the database scheme, codes, or abbreviations.

      **3. Metadata**: No metadata will be searched or produced unless good cause for the production can be shown and such good cause outweighs the producing party's claim of undue burden or cost. The parties will meet and confer as to good cause on this issue. Good cause exists to search and produce metadata, to the extent that metadata exists, when such metadata is reasonably likely to reveal the date, author, or recipient of specific key documents that the party identifies as material to a fact or issue in dispute, and such information is not reasonably available through other forms of discovery. Metadata

associated with responsive ESI shall be preserved, to the extent reasonably possible without undue expense and subject to any pre-existing technological limitations.

4. <u>Third-Party Software</u>:  To the extent Data produced pursuant to this Order cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall cooperate and seek to attempt to minimize any expense or burden associated with production of such data.  The Parties shall meet and confer to address such issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

5. <u>E-mail</u>:  The parties agree that E-mail shall not be searched and produced, unless good cause for the production can be shown and such good cause outweighs the producing party's claim of undue burden or cost.  The parties agree, without limiting further instances of good cause, that good cause to search and produce electronic mail exists when electronic mail is reasonably likely to reveal the authorship, receipt, timing, meaning or context of specific key documents or events that the receiving party identifies as material to a fact or issue in dispute, and such information is not readily and economically available through other forms of discovery.  Any request for searching and production of E-mail shall be in writing and provide (1) an explanation of good cause for the search; (2) the identity of the individual whose E-mail account shall be searched; and (3) a list of proposed search terms.  The parties will meet and confer as to each of issues (1)-(3).  Notwithstanding the foregoing, to the extent that a party is currently aware or becomes aware of E-mail relevant and responsive to this Action, the party shall produce such E-mail, including, but not limited to, printed E-mails existing in paper files.  No party

need deviate from the practices it normally exercises with regard to preservation of email when it is not in anticipation of litigation (*e.g.*, recycling of back-up tapes and other routine email system maintenance is permitted).

6. <u>Back-up Tapes</u>:  Back-up Tapes or other materials retained primarily for back-up or disaster recovery purposes, whether in tape, floppy disk, optical disk, or similar formats, will not be considered not reasonably accessible under Federal Rule 26(b)(2)(B) and, accordingly, are not subject to production unless specific facts demonstrate a particular need for such evidence that justifies the burden of retrieval.  No party need deviate from the practices it normally exercises with regard to preservation of email when it is not in anticipation of litigation (*e.g.*, recycling of back-up tapes and other routine email system maintenance is permitted).

7. <u>Archives</u>:  Archives stored on computer servers, external hard drives, notebooks, or personal computer hard drives that are created for disaster recovery purposes and not used as reference materials in the ordinary course of a party's business operations need not be searched or produced absent good cause, but also subject to the producing party's claim of undue burden or cost.  The parties agree that good cause to search and produce such archives exists when the documents contained in the archives are reasonably likely to contain responsive documents that are unique, or otherwise not duplicative of documents found in those non-archived files that the producing party has otherwise searched for production.  No party need deviate from the practices it normally exercises with regard to preservation of email when it is not in anticipation of litigation (*e.g.*, recycling of back-up tapes and other routine email system maintenance is permitted).

8. <u>Financial Information</u>:  To the extent financial information is sought, only summary financial information, of the type used in the ordinary course of a party's business, will be produced absent a showing of good cause that production of underlying documentation or information is necessary.  The parties will meet and confer to discuss the parameters of the production of any underlying financial documentation or information.

9. <u>Marketing Materials</u>:  Only final versions of marketing materials of the type used in the ordinary course of a party's advertising and marketing operations need be produced absent a showing of good cause that production of incomplete or draft versions of such documents, to the extent they exist, is necessary.  The parties will meet and confer to discuss the parameters of the production of any such draft documentation.

10. <u>Final Versions</u>:  Only final versions of technical drawings, schematics, specifications, manuals and like documents, of the type used in the ordinary course of a party's business operations, need be produced absent a showing of good cause that production of incomplete or draft versions of such documents, to the extent they exist, is necessary.  The parties will meet and confer to discuss the parameters of the production of any such draft documentation.

11. <u>Production from Central Network</u>:  If responsive documents are located on a centralized server or network, the producing party shall not be required to search for additional copies of such responsive documents that may be located on the personal computer, or otherwise in the possession of individual employees, absent a showing of good cause that the production of such additional copies is necessary.  The parties will meet and confer to discuss the parameters of the search and production of any such documents.

**II.    CONFIDENTIALITY AND PRIVILEGE LOGS.**

1. <u>Logs</u>:  The parties shall not be obligated to identify on their privilege logs any documents created after the filing of this lawsuit and/or reflecting communications between outside litigation counsel and their clients that concern this litigation.

2. <u>No Waiver</u>:  All parties reserve all rights to challenge any party's right to withhold any document based on attorney-client privilege and/or work product protections regardless of whether a party was required to identify the document on a privilege log.

**III.    EXPERTS.**

1. Drafts of expert reports, communications with experts, and notes made in preparation of expert reports shall not be discoverable and do not need to be identified on a privilege log:

2. All witnesses intending to provide expert testimony at trial shall submit an expert report and all expert reports shall comply with the requirements of Fed. R. Civ. P. 26(a)(2).

DATED this 15th day of July, 2008.

BY THE COURT:

/s/ Lyle E. Strom
_____
**LYLE E. STROM**
**United States District Judge**