IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

```
ROBERT E. GREEN,              )
                              )
          Plaintiff,          )        8:08CV200
                              )
     v.                       )
                              )
CONAGRA FOODS, INC.,          )        MEMORANDUM AND ORDER
                              )
          Defendant and       )
          Counterclaimant)
_____)
```

This matter is before the Court following a *Markman* hearing to construe certain claim terms of United States Patent No. 5,315,083 ("the '083 patent"). After considering the parties' briefs and arguments and the applicable law, the Court issues the following order on claim construction.

### BACKGROUND

The '083 patent was issued to Robert Green ("Green") and is directed toward a microwave cooking utensil that is capable of heating two different foods with different microwave absorbing properties at the same time (the '083 patent, col. 1, ll. 5-11). Green claims ConAgra Foods Inc.'s ("ConAgra") Healthy Choice® Café Steamers® product infringes claims 1, 5, and 6 of the '083 patent (Filing No. 1, ¶¶ 8, 13).

In the parties' joint claim construction statement (Filing No. 64), ConAgra identified the following terms as requiring construction: vessel, wall, frusto-conical, depending flange, annular space, vent means (claim 5), and vent means

(claim 6).  Green indicated that no terms required construction. The parties offered proposed constructions of the terms in the joint construction statement, submitted claim construction briefs, and presented oral arguments at the *Markman* hearing.

## DISCUSSION

The claims of a patent define the scope of the invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)(en banc).  Claim interpretation is a question of law for the Court.  *Markman v. Westview Instruments*, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995)(en banc), *aff'd*, 517 U.S. 370 (1996).  When the parties raise an actual dispute as to the scope of the patent claims, it is the Court's obligation to resolve the dispute.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

Generally, claim terms are given their ordinary and customary meaning, which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  *Phillips*, 415 F.3d at 1312-13.  "In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Id.* at 1314.  However, in many cases, claim terms have a particular meaning in the field of art and patentees use words

idiosyncratically.  *Id.*; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

To ascertain the meaning of words in a claim, the Court primarily considers the intrinsic record, which consists of the claims, the specification, and the prosecution history. *Vitronics Corp.*, 90 F.3d at 1582.  The Court considers the claim language first, followed by the specification, and finally the prosecution history.  *Id.*  The Court may also consider extrinsic evidence; however, extrinsic evidence is generally not as reliable as the intrinsic record.  *Phillips*, 415 F.3d at 1317-1319.

### 1. VESSEL

ConAgra defines "vessel" as a "container capable of holding liquid" (Filing No. 64).  Green defines "vessel" as "a container capable of holding food" (*Id*.).  The primary distinction between the parties' constructions is ConAgra contends a vessel must always be capable of holding liquid food, while Green contends a vessel may be, but is not required to be capable of holding liquid food.

The intrinsic record supports ConAgra's construction, and therefore, the Court finds that vessel means a container capable of holding solid and liquid food.  Claim 1 of the '083 patent states the cooking utensil contains "a first microwave transparent vessel for holding a first food material" and "a

second microwave transparent vessel for holding a second food material." The claim language does not specify whether a vessel must be capable of holding liquid food; however, the specification and prosecution history clarify that the '083 patent uses vessel to refer to a solid container.

There are several indications in the patent specification that the first and second vessels are solid containers. Foremost, the specification states that spaghetti sauce can be placed in the first vessel and describes how "liquid contents" can be dispensed from the first vessel (the '083 patent, col. 5, ll. 34-36; col. 6, ll. 45-49). Second, figure 3 of the '083 patent depicts the outside of both vessels with cross hatching to indicate the vessels are solid containers. Third, the stated purpose of the invention compels a finding that the second vessel is a solid structure. The summary of invention section of the specification states the following:

> During use, a first food is placed in the first vessel and the second food is placed in the second vessel . . . The second vessel is placed in the first vessel to displace a portion [sic] the food in the first vessel thereby forming a hollow void in the center of the food.

(*Id.* at col. 3, ll. 3-11; *see also* fig. 3).

As described in the detailed description section of the patent specification, the displaced food forms an annular column

of food around food in the second vessel (*See id*. at col. 4, l. 62 - col. 5, l. 5; fig. 3).  As a result, the annular column of food (i.e. food in the first vessel) shields food in the second vessel from microwaves passing through the side of the utensil (*Id*. at col. 6, ll. 27-30).  When the second vessel is placed into the first vessel, the side and bottom walls of the second vessel are in contact with food in the first vessel and food in the second vessel at the same time.  Impliedly, the second vessel's walls must be solid such that food in the first and second vessel does not mix (*Id*. at fig. 3).

The prosecution history provides additional evidence that the side wall of the second vessel must be solid. Initially, the examiner rejected claims 1-11 of the '083 patent as obvious over United States Patent No. 4,532,397 (the "McClelland patent") and United States Patent No. 4,233,325 ("Slangan et al.")(Filing No. 67-4, Exh. B).  Green requested reconsideration, and as a result, the examiner determined Green's invention was distinguishable from McClelland's invention on the ground that Green's invention permitted two foods to be in contact with opposite sides of the second vessel's side wall without mixing.  Specifically, the examiner remarked:

> The patent to McClelland discloses
> a structure that does not disclose
> the two spaced, frusto-conical
> walls of the applicant's claimed
> invention.  There is no provision
> for two spaces in the McClelland

>           device to hold two food materials
>           separate and apart from one another
>           yet in contact with a common wall
>           such that convection heat can be
>           transmitted through the common wall
>           from one food material into the
>           other.

(*Id*. at p. 3).

In order for the second vessel's side wall to achieve the result stated by the examiner, the side wall must be solid. Otherwise, foods on opposite sides of the wall would not remain separate and apart.[1]

Based on the intrinsic evidence, one of ordinary skill in the art would conclude the '083 patent uses vessel to mean a container that must be capable of holding both solid and liquid food. If the Court adopted Green's construction of the term, a perforated container could be a vessel. Such a construction is not supported by the intrinsic record and contradicts the embodiment described in the specification.

Green contends that even if the first vessel refers to a solid container, the specification does not support the conclusion that the second vessel must also be capable of holding liquid. Essentially, Green claims the term vessel should be construed differently for first vessel and second vessel. This

---

[1] Green argues that even perforated walls could keep two solid foods apart. Notwithstanding the fact that the specification specifically describes using the first vessel for liquid, even two solid foods would not necessarily remain entirely separate during microwave cooking.

-6-

argument fails because claim terms should generally be construed consistently throughout the claims,[2] and nothing in the intrinsic record indicates that vessel should be construed differently for first vessel and second vessel.

**2. WALL**

ConAgra defines "wall" as a "barrier capable of being in contact with two food materials while holding them separate and apart from one another" (Filing No. 64).  Green contends "wall" "defines the outside of a vessel for maintaining relative position of food, not a barrier" (*Id.*).

In accordance with the above discussion, the Court finds that "wall" means a barrier.  The patent uses wall to define the boundaries of a vessel.  Claim 1 states the first vessel has "a bottom wall" and "a substantially frusto-conical side wall converging toward said bottom wall," and the second vessel has "a bottom wall" and "a frusto-conical side wall having an upper end."  Figure 3 of the patent specification shows the bottom and side walls form the outermost boundary of a vessel. The specification does not explicitly use the term barrier to define a vessel's wall, but such a construction is implicit in the specification.  As discussed above, figure 3 depicts the bottom and side walls of both vessels as solid and the bottom and

---

[2] *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001).

side walls of the second vessel must be solid to prevent foods in the first and second vessels from mixing when the vessels are nested.  Further, during prosecution of the patent, the examiner removed his obvious objection based on the understanding that the second vessel's side wall could be in contact with two different foods while keeping the foods separate and apart.  Parts of the specification and prosecution history regard specific walls of the first or second vessel, but wall should be construed consistently for the side and bottom walls of both vessels.

**3. FRUSTO-CONICAL**

ConAgra defines "frusto-conical" as "the shape of a cone with its tip cut off" (Filing No. 64).  Green did not initially construe "frusto-conical" but defined "substantially frusto-conical" as "the side wall is not parallel, it tapers in a manner that is shaped like the wall of a cone" (*Id.*).

The Court finds the intrinsic record supports ConAgra's construction of the term.  Claim 1 of the '083 patent states the the first vessel has a "substantially frusto-conical side wall," and the second vessel has "a frusto-conical side wall."

According to the specification, "frusto-conical" refers to the shape of the vessel's side wall (*See* the '083 patent, col. 2, l. 54; col. 4, l. 23; col. 4, ll. 50-51).  The specification describes the side wall of the first and second vessels as angled (*see id.*, col. 4, ll. 60-63), and states that in the preferred

embodiment, the first vessel's side wall is "frusto-conical shaped expanding upwardly such that the upper edge is slightly wider than the base" (*Id*. at col. 2, ll. 53-55).  Figure 3 depicts the side walls of the first and second vessels as the shape of a cone with the tip cut off.

Green's construction of the term is slightly too broad because it defines conical rather than frusto-conical.  In contrast, ConAgra's construction appropriately construes both portions of the term, and ConAgra's construction is supported by the specification.  Green agrees that frusto-conical means a truncated cone, but Green contends a different construction is appropriate because the patent uses frusto-conical to describe the shape of a wall rather than the shape of a vessel.  The Court is not persuaded that this fact requires an alternate construction of the term.

**4. DEPENDING FLANGE**

Initially, ConAgra defined "depending flange" as a "collar that engages the first vessel," and Green defined the term as "the lip around the upper edge that extends out from the side wall" (Filing No. 64).  During the *Markman* hearing, Green agreed to define the term in part as a flange that engages the first vessel, and the parties appeared content to leave flange undefined.

Accordingly, the Court finds "depending flange" means a flange that extends radially outward from the second vessel to engage the first vessel.  This construction is supported by the claim language and the summary of the invention section of the patent specification (*See* the '083 patent, claim 1; col. 2, ll. 60-62).

### 5. ANNULAR SPACE

While initially disputed, the parties agreed during the *Markman* hearing to construe "annular space" as the space of or relating to an area formed by two concentric circular or curved regions.  This construction is supported by the intrinsic record (*See id.*, claim 1; col. 4, l. 62 - col. 5, l. 5; fig. 3).

### 6. VENT MEANS, CLAIM 5

ConAgra contends "vent means" in claim 5 invokes 35 U.S.C. § 112, ¶ 6.  ConAgra contends the function of the limitation is "to vent vapor from the first vessel," and the structure of the limitation is "an opening in the flange of the second vessel" (Filing No. 64).  Green did not specifically address whether "vent means" invokes § 112, ¶ 6 but defined the term as "any opening which allows venting of the annular space" (*Id.*).

Section 112, ¶ 6 of title 35 provides:

> An element in a claim for a
> combination may be expressed as a
> means or step for performing a
> specified function without the

>    recital of structure, material, or
>    acts in support thereof, and such
>    claim shall be construed to cover
>    the corresponding structure,
>    material, or acts described in the
>    specification and equivalents
>    thereof.

"A claim element that contains the word 'means' and recites a function is presumed to be drafted in means-plus-function format under 35 U.S.C. § 112 ¶ 6." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1366 (Fed. Cir. 2008). The presumption is rebutted if the claim recites sufficient structure to perform the claimed function. *Id.* "The first step of a 35 U.S.C. § 112, ¶ 6 analysis is to identify the function of the claim limitation. The second step requires identification of the structures disclosed in the specification and equivalents thereof that perform the claimed function." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1324 (Fed. Cir. 2001)(internal citations omitted).

In this case, the Court finds "vent means" in claim 5 invokes 35 U.S.C. § 112, ¶ 6. Claim 5 states: "The utensil in accordance with claim 1, wherein said second vessel includes vent means to vent vapor from said first vessel." The claim language presumptively invokes § 112, ¶ 6, and the claim does not recite sufficient structure to rebut the presumption. Accordingly, the Court must construe the claim as a means-plus-function limitation. The plain language of claim 5 states that the

function of the limitation is to vent vapor from the first vessel. The specification identifies an opening in the flange of the second vessel as the means for performing this function (*See* the '083 patent, col. 5, ll. 30-33; fig. 2).[3]

Thus, "vent means" in claim 5 invokes § 112, ¶ 6. The function of the limitation is to vent vapor from the first vessel, and the means for performing the function is an opening in the flange of the second vessel.

### 7. VENT MEANS, CLAIM 6

ConAgra claims "vent means" in claim 6 invokes § 112, ¶ 6. ConAgra argues the function of the limitation is "to vent the second vessel" and the means of the limitation is "an opening in the cover" (Filing No. 64). Green does not specifically address whether the language of claim 6 is written in means-plus-function form but defines the term as "any venting of the second vessel" (*Id.*).

Similar to the discussion of "vent means" in claim 5, the Court finds "vent means" in claim 6 invokes § 112, ¶ 6. Claim 6 states: "The utensil in accordance with claim 1, wherein said cover includes vent means for venting the second vessel." The plain language of claim 6 states the function of the limitation is to vent the second vessel. The specification

---

[3] The specification states the opening in the flange vents vapor from the annular space. As depicted in figure 3 of the '083 patent, the annular space is inside the first vessel.

identifies an opening in the cover as the means for performing this function (*See* the '083 patent, col. 5, ll. 37-42; fig. 2). The Court adopts ConAgra's construction of "vent means" in claim 6.

       IT IS ORDERED:

       1) Vessel means a container capable of holding solid and liquid food.

       2) Wall means a barrier.

       3) Frusto-conical means the shape of a cone with its tip cut off.

       4) Depending flange means a flange that extends radially outward from the second vessel to engage the first vessel.

       5) Annular space means the space of or relating to an area formed by two concentric circular or curved regions.

       6) Vent means in claim 5 invokes 35 U.S.C. § 112, ¶ 6. The function of the limitation is to vent vapor from the first vessel, and the means is an opening in the flange of the second vessel.

       7) Vent means in claim 6 invokes 35 U.S.C. § 112, ¶ 6. The function of the limitation is to vent the second vessel, and the means is an opening in the cover.

       DATED this 9th day of January, 2009.

                            BY THE COURT:

                            /s/ Lyle E. Strom
                            _____
                            LYLE E. STROM, Senior Judge
                            United States District Court